IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADOLPH MICHELIN, | ) |
| | ) |
| Petitioner, | )  Case No. 3:23-cv-22 |
| | ) |
| v. | )  Magistrate Judge Patricia L. Dodge |
| | ) |
| LEONARD ODDO, *et al.*, | ) |
| | ) |
| Respondents. | ) |

**MEMORANDUM**[1]

For the reasons that follow, the Court will grant in part the First Amended Petition for a Writ of Habeas Corpus (ECF 4) filed by Adolph Michelin ("Petitioner") and direct the appropriate Respondents to arrange for Petitioner to have a bond hearing before an immigration judge within 30 days at which the government bears the burden to justify his continued detention by clear and convincing evidence.

**I.      Relevant Background and Facts**

These facts are not in dispute. Petitioner is a native of Jamaica who has lived in the United States since 2010. He entered the country that year on a visitor visa and overstayed his authorized presence. In 2012, he was detained by Immigration and Customs Enforcement ("ICE") and placed into removal proceedings by the Department of Homeland Security ("DHS") as a visa overstay. He was released on bond in late 2012. (ECF 4 at pp. 5-6.)

After relocating to Florida, Petitioner applied for adjustment of status before the immigration court. Petitioner's removal proceedings concluded in November 2016. In 2017, the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

1

Immigration Court denied Petitioner's application and ordered that he be removed. The Board of Immigration Appeals ("BIA") affirmed the Immigration Court's decision in February 2018. (*Id.* at p. 6.)

Petitioner subsequently moved to Philadelphia, Pennsylvania. On or around January 10, 2022, he was arrested again by ICE in Philadelphia on an active I-205 Warrant of Removal/Deportation. It detained him at the Moshannon Valley Processing Center ("Moshannon")[2] in Philipsburg, Pennsylvania, which is located within the territorial boundaries of this Court. (*Id.* at p. 8; Resp's Ex. 1, ECF 8-1 at pp. 1-5.) ICE detained Petitioner at Moshannon from January 2022 until late July 2023, when it transferred him to another detention facility.[3] (ECF 14.) Thus, as of the date of this writing Petitioner has been detained by ICE for more than 18 months.

On January 27, 2022, within weeks of his arrest, the DHS issued in Petitioner's case a Notice of Custody Determination. (Pet's Ex. E, ECF 4-1 at pp. 83-85.) This Notice incorrectly stated that Petitioner was being detained pursuant to 8 U.S.C. § 1226 (§ 236 of the Immigration and Nationality Act ("INA")).[4] This Notice advised Petitioner that his "egregious criminal history in the United States shows a clear lack of respect for life and the laws of the United States…. [B]ased on the seriousness of your criminal history, you have been found to present a potential threat to public safety and/or property. As such, your continued detention is warranted." (*Id.* at p. 85.)

---

[2] Petitioner's Exhibit H is the declaration of Attorney Lilah Thompson, who has visited Moshannon and represented multiple clients there. (ECF 4-1 at pp. 93-97.) She described the facility and the restrictions in place there and states that it is indistinguishable from a federal or state prison. Respondents do not contest Attorney Thompson's description of Moshannon.

[3] On or around July 26, 2023, ICE transferred Petitioner from Moshannon to a detention center in Virginia. This transfer did not divest this Court of jurisdiction to decide the pending Amended Petition since Petitioner was detained at Moshannon when he filed it. (ECF 14, 15.)

[4] As explained below, the DHS now states that the authority to detain Petitioner is derived not from 8 U.S.C. § 1226 but from 8 U.S.C. § 1231(a) (§ 241(a) of the INA), which applies to noncitizens with outstanding final removal orders.

ICE then made arrangements for Petitioner to be removed on a flight to Jamaica at the end of March 2022. (Resp's Ex. 2, ECF 8-2 at p. 2.) On March 25, 2022, Petitioner, through his current counsel, filed a motion with the BIA to reopen his immigration case. At that same time, he applied for an emergency stay of removal in which he asserted his eligibility for asylum based on his fear of persecution in Jamaica. The BIA granted Petitioner a discretionary stay of removal on March 28, 2022. However, as of the date of this writing, the BIA has not ruled on Petitioner's motion to reopen his immigration case. (ECF 4 at pp. 8-9.) Thus, that motion has been pending before the BIA for more than 16 months.

In October 2022, having receiving no ruling from the BIA on the pending motion to reopen, Petitioner's counsel contacted his deportation officer to determine when Petitioner's next custody review would be held and how counsel might submit evidence on his behalf. (Pet's Ex. G, Viets' Decl., ECF 4-1 at p. 90.) The deportation officer informed Petitioner's counsel that Petitioner would not have another custody review until around the end of March 2023. (*Id.*) Consistent with the information contained in the DHS's January 2022 Notice of Custody Determination, Petitioner's deportation officer also advised counsel that it was the DHS's position that Petitioner was being detained pursuant to the authority contained in § 1226(a). (*Id.*; Pet's Ex. F, ECF 4-1 at p. 88.)

Under § 1226(a), Petitioner would not be subject to mandatory detention and would be eligible for a bond hearing before the Immigration Court. Thus, Petitioner's counsel moved for a bond hearing. (*Id.*) This hearing was held before the Immigration Court on January 17, 2023. During it, DHS counsel stated for the first time that Petitioner was *not being detained pursuant to § 1226(a)*. Rather, DHS counsel stated, Petitioner was being detained under § 1231(a)(6), which is the post-removal-order detention authority provision of the INA. This statute contains no explicit bond hearing requirement. (*Id.* at pp. 90-91.) Based on DHS counsel's explanation that Petitioner was in

3

fact being detained under § 1231(a)(6), the Immigration Court did not conduct a merits-based discretionary hearing on bond. Instead, it held that it lacked jurisdiction to consider Petitioner's bond motion. (*Id.*)

During this same hearing, DHS counsel advised Petitioner's counsel that ICE had "just completed a custody evaluation" of Petitioner. (*Id*. at p. 91.) Petitioner's counsel avers—and Respondents do not contest—that this was the first time she was notified "of this custody evaluation, despite having been [Petitioner's] counsel of record for nearly a year, having corresponded with [Petitioner's deportation officer] about the custody evaluation just three months' prior, and having communicated on a near-constant basis with ICE officials at Moshannon Valley to coordinate calls with [Petitioner] throughout 2022." (*Id.*) Petitioner's counsel requested that DHS counsel notify ICE of her intention to submit documentation to ICE to support Petitioner's release. DHS counsel agreed to contact ICE as soon as possible. (*Id.*)

The next day, on January 18, 2023, a DHS officer called Petitioner's counsel and informed her that Petitioner's custody evaluation had "already been completed" and "sent up the chain of command" at DHS. As a result, the officer stated, Petitioner's counsel would be unable to submit documentation in support of Petitioner's release from detention. (*Id.*)

One day later, on January 19, 2023, ICE issued a Decision to Continue in which it informed Petitioner that it would not release him from custody because it expected to carry out his "removal in the reasonably foreseeable future should your Motion to Reopen and Stay of Removal be denied." (Resp's Ex. 4, ECF 8-4 at p. 2.) This Decision recounted Petitioner's criminal history, including, but not limited to, a September 14, 2021 arrest in Philadelphia for the offenses of criminal

4

conspiracy, simple possession, and possession with intent to distribute narcotics.[5] ICE stated that its "decision [was] made based on a review of your file, *consideration of the information you submitted to ICE's reviewing officials,* and upon review of the facts for consideration set forth at 8 C.F.R. § 241.4(e), (f), and (g)." (*Id.*, emphasis added.) However, as discussed above, it is undisputed that Petitioner's counsel had not been notified of this review or permitted to submit documentation to support his request for supervised release.

Petitioner, through counsel, commenced this federal habeas case in February 2023. The operative pleading is the First Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF 4.) Petitioner claims that his continued detention without a constitutionally adequate bond hearing has become unreasonably prolonged in violation of the Fifth Amendment's Due Process Clause. (*Id.* at pp. 13-29.) He also claims that DHS's failure to conduct post-removal-order custody reviews in accordance with the applicable regulations did not provide him with an adequate, meaningful process to challenge his prolonged detention under § 1231(a)(6). (*Id.* at pp. 28-33.) As relief, he seeks an order from this Court ordering his immediate release or, alternatively, that he receive an individualized bond hearing at which the government bears the burden of establishing by clear and convincing evidence that he poses a danger or a flight risk that cannot be addressed by conditions of release.

Respondents have filed the Answer (ECF 8) opposing Petitioner's request for habeas relief and Petitioner has filed the Reply (ECF 10.)

---

[5] Petitioner maintains that these charges have been dismissed. (ECF 10 at p. 13.) He does not direct the Court to evidence to support this assertion, however. Petitioner will have the opportunity to present such evidence to an immigration judge at the bond hearing.

**II.     Discussion**

The habeas statute at 28 U.S.C. § 2241 confers jurisdiction on a federal court to decide whether an individual is in custody in violation of either the laws or the Constitution of the United States. 28 U.S.C. § 2241(c)(3). Thus, this Court has jurisdiction to consider the merits of this case. *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001) (§ 2241 confers jurisdiction upon the federal courts to hear both statutory and constitutional challenges to post-removal-period detention.)

As explained above, ICE is detaining Petitioner under the post-removal detention provision of the INA, which is codified at § 1231(a). This statute provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The noncitizen *must be detained* during this 90-day timeframe, *id.* § 1231(a)(2), which is "referred to as the 'removal period.'" *Id.*, § 1231(a)(1)(A).

If the noncitizen "does not leave or is not removed within the removal period," then he or she is normally subject to supervised release. *Id.* § 1231(a)(3). However, § 1231(a)(6) provides that certain categories of aliens who have been ordered removed, including inadmissible and criminal noncitizens or noncitizens whom the Attorney General has determined are a risk to the community or are unlikely to comply with the order of removal, "*may be detained* beyond the removal period[.]" (Emphasis added.) There is no dispute that Petitioner falls within one of the categories of noncitizens covered by § 1231(a)(6) and that he is being detained under this provision of the INA.

The text of § 1231(a)(6) does not contain an express limit on the duration a noncitizen can be detained under its authority. In 2001, the Supreme Court decided *Zadvydas v. Davis*, 533 U.S. 678 (2001). In that case, the government argued that § 1231(a)(6) "means what it literally says. [That is, it] sets no limit on the length of time beyond the removal period that an alien who falls

within one of [§] 1231(a)(6) categories may be detained." 533 U.S. at 689 (citation and internal quotations omitted). The government's position was that whether to continue to detain an alien under § 1231(a)(6) "and, if so, in what circumstances and for how long, is up to the Attorney General, not up to the courts." *Id.* (citation and internal quotations omitted).

The *Zadvydas* Court rejected the government's proposed interpretation of § 1231(a)(6). It outlined the due process concerns that would be implicated by a statute permitting indefinite detention. *Id.* at 690-96. Invoking the canon of constitutional avoidance so that it did not have to decide whether § 1231(a)(6) violated the Fifth Amendment's Due Process Clause, the Supreme Court interpreted the statute to contain an implicit temporal limit. It held that the statute, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689.

The *Zadvydas* Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, if removal is no longer reasonably foreseeable, continued detention is no longer authorized under § 1231(a)(6). At that point, the Supreme Court explained, a noncitizen could bring a claim in a federal habeas petition asserting that ICE no longer has the statutory authority for continued detention. *Id.* at 700-01. In such a proceeding, the Supreme Court instructed, the noncitizen must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the noncitizen does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.*

The DHS promulgated regulations around the time of, and after, the *Zadvydas* decision that established a series of processes to address the concerns discussed in that decision and to determine

7

whether a noncitizen should be released from custody after the expiration of the 90-day removal period. 8 C.F.R. §§ 241.4 and 241.13. These regulations provide for administrative custody reviews at 90 days, 180 days, and one year. 8 C.F.R. § 241.4(k). They do not provide for a bond hearing before an immigration judge.

In 2018, in *Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208, 223-24 (3d Cir. 2018), the United States Court of Appeals for the Third Circuit interpreted § 1231(a)(6). Applying the theory of constitutional avoidance so it would not have to decide whether the petitioner's prolonged detention under § 1231(a)(6) without a bond hearing violated the Due Process Clause, the Third Circuit construed the statute as implicitly entitling a noncitizen to a bond hearing after six months. At that hearing, the Third Circuit held, the government has the burden to establish by clear and convincing evidence that the petitioner poses a risk of flight or a danger to the community. *Guerrero-Sanchez*, 905 F.3d at 219-26. In support of its decision to read these implicit requirements in the statute, the Third Circuit recognized the serious due process concerns posed by a noncitizen's prolonged detention under § 1231(a)(6) without a bond hearing before an immigration judge. *Id*.

In reaching its holding in *Guerrero-Sanchez* and explaining why it had determined that the government should bear the burden at a bond hearing, the Third Circuit explained that it would not apply *Chevron* deference to the DHS's regulations at 8 C.F.R. §§ 241.4 and 241.13. It so held because it determined that those regulations posed serious constitutional concerns since they provide for administrative custody reviews "by DHS employees who are not ostensibly neutral decision makers such as immigration judges"; placed the burden on the noncitizen, not the government, to prove that he or she is not a flight risk or a danger to society; and offered no avenue to appeal an adverse custody decision by the DHS. *Guerrero-Sanchez*, 905 F.3d at 226-27. Thus,

8

to avoid the constitutional concerns it had identified, the court read an implicit bond hearing requirement before an immigration judge into the text of § 1231(a)(6) at which the government must establish, by clear and convincing evidence, that the noncitizen poses a risk of flight or a danger to the community. *Id.* at 224 n.12, 226-27.

The Supreme Court abrogated *Guerrero-Sanchez* in *Johnson v. Arteaga-Martinez*, — U.S. —, 142 S. Ct. 1827 (2022) because it held that the Third Circuit should not have applied the canon of constitutional avoidance to find an implicit requirement of a bond hearing at which the government bore the burden *in the text* of § 1231(a)(6). The Supreme Court so held because it found that, as to the issue at hand, it could not be said that the statute had "more than one plausible construction." *Arteaga-Martinez*, 142 S. Ct. at 1833 (quoting *Jennings v. Rodriguez*, — U.S. —, 138 S. Ct. 830, 842 (2018), which emphasized that the canon of constitutional avoidance applies only where a statute "has more than one plausible construction.")). Thus, the Supreme Court held, the canon of constitutional avoidance simply was not applicable to the circumstance at issue. *Id.* at 1833-34. As a result, the Supreme Court held that *as a matter of statutory interpretation* § 1231(a)(6) does not require the government to provide noncitizen detainees with a bond hearing before an immigration judge after six months at which the government bears the burden of proving a risk of flight or danger to the community by clear and convincing evidence. *Id.*

Importantly, however, although the Supreme Court in *Arteaga-Martinez* rejected the Third Circuit's statutory interpretation of § 1231(a)(6), it did not abrogate that part of *Guerrero Sanchez* which explained why prolonged detention under § 1231(a)(6) may violated the Due Process Clause. Rather, the Supreme Court noted that the lower courts declined to reach the petitioner's constitutional claims due to their statutory reading and thus it left the constitutional claims "for the lowers courts to consider in the first instance." *Id.* at 1835. Indeed, even the government conceded

in *Arteaga-Martinez* that although noncitizens detained pursuant to § 1231(a)(6) are not *statutorily* entitled to automatic bond hearings after six months, "as-applied constitutional challenges remain available" for those noncitizens who continue to be detained well beyond the time normally required to execute a removal order. *Id.* Thus, noncitizens detained under § 1231(a)(6) past the *Zadvydas* six-month presumptively constitutional period may bring an as-applied due process challenge to his or her detention under the statute.

Here, Petitioner brings an as-applied procedural due process challenge. He claims that his unreasonably prolonged detention under § 1231(a)(6) without a bond hearing at which the government bears the burden of justifying his continued detention violates his right under the Due Process Clause. (ECF 4 at pp. 14-29.)

In support, Petitioner contends that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future because the BIA's March 2022 decision to grant him a stay of removal suggests its belief that his pending motion to reopen his immigration case is meritorious and likely will be granted. If the motion to reopen is granted, Petitioner contends, he will then face proceedings before an Immigration Court, which could take several months. Depending on the outcome of that proceeding, Petitioner states, either he or the government may appeal the result to the BIA. Petitioner also points out that, as seen with his still-pending motion to reopen, it may take the BIA considerable time to adjudicate any appeal. Petitioner further asserts that if the BIA denies his pending motion to reopen, he will petition for review with the Third Circuit, which has a standing order to automatically grant stays of removal. He asserts that petition could take months or years to be adjudicated.

Respondents do not counter these specific points. Rather, they assert that Petitioner is not entitled to habeas relief under *Zadvydas* because he stands to be deported to Jamaica if his request

to reopen his immigration proceedings is denied. They assert that the only reason Petitioner was not released from custody and deported at the end of March 2022 was because he chose to move to reopen those proceedings. Respondents cite out-of-circuit, unpublished decisions in which the habeas court denied noncitizens' *Zadvydas* claims when the delay of removal was caused by legal proceedings initiated by the noncitizens themselves and not, as was the case with each petitioner in *Zadvydas*, the government's inability to find a country to accept the petitioners. (ECF 8 at pp. 8-9, citing, *inter alia*, *Guangzu Zheng v. Decker*, 618 F. App'x 26, 28 (2d Cir. 2015) (denying the petitioner's *Zadvydas* claims when the government had obtained travel documents for him but his removal was delayed because he filed a motion for a stay of removal which was pending before the BIA)).

Petitioner counters by pointing out that the absence of cases on point from courts within the Third Circuit makes sense because for many years noncitizens detained within this circuit who had removal orders but who continued to seek relief through withholding-only proceedings were considered detained under 8 U.S.C. § 1226 rather than under § 1231. That did not change until the Third Circuit decided *Guerrero-Sanchez* in 2018. *See Guerrero-Sanchez*, 905 F.3d at 213-19 (holding that the authority for ICE to detain the petitioner in that case, who had a reinstated order of removal and was pursuing withholding-only relief, was derived from § 1231(a)(6) and not § 1226(a)). Then, from the publication of *Guerrero-Sanchez* until the Supreme Court's June 2022 decision in *Arteaga-Martinez*, the rule in the Third Circuit was that noncitizens in Petitioner's position were to automatically receive a bond hearing before an immigration judge after six months, thus making individual habeas petitions unnecessary. Thus, Petitioner argues, the dearth of on point in-circuit cases reflects nothing about the strength of his *Zadvydas* claim.

In any event, although Petitioner maintains that "[u]nder *Zadvydas*, it is enough for him to show that he is not likely to be removed soon in order for this Court to order a bond hearing[,]" he recognizes that since the Supreme Court decided *Arteaga-Martinez* last year, there is ambiguity about the proper framework to analyze as-applied due process challenges for individuals like him, who are being detained under § 1231(a)(6). (ECF 4 at p. 18.) Petitioner persuasively argues that the Court should apply the framework set forth by the Third Circuit in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020). Respondents do not directly dispute or otherwise respond to this argument.

*German Santos* involved a noncitizen detained by ICE pursuant to 8 U.S.C. § 1226(c). That statute requires the government to detain noncitizens convicted of certain crimes when they await decisions in their removal proceedings. Before *German Santos*, the Third Circuit had already held "when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011) (continued detention under § 1226(c) is unconstitutional when it extends beyond a "reasonable" period); *see also Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 474-75 (3d Cir. 2015) (elaborating on the factors to consider in evaluating prolonged detention claims). In *Diop*, the Third Circuit reasoned that the constitutionality of mandatory detention "is a function of the length of the detention." 656 F.3d at 232. Accordingly, the court explained, it becomes unconstitutional when detention continues for "an unreasonable length of time *without further individualized inquiry into whether detention is necessary to carry out the purposes of the statute*." *Id.* at 233 n. 11 (emphasis added); *see also Chavez-Alvarez*, 783 F.3d at 475.

After explaining that "our constitutional analysis in *Diop* and *Chavez-Alvarez* are still good law[,]" 965 F.3d at 210,[6] the Third Circuit in *German Santos* established a four-factor, non-exhaustive, case-by-case balancing test to adjudicate as-applied challenges for noncitizens asserting that their detention without a bond hearing has become unconstitutionally prolonged. *Id.* at 212-13. The court emphasized that "[r]easonableness is a 'highly fact-specific' inquiry." *Id.* at 210 (quoting *Chavez-Alvarez*, 783 F.3d at 474).

The first and "most important" factor for the habeas court to consider is the "duration of detention." *Id.* at 211. Although in *German Santos* the court refused to adopt a presumption of reasonableness of any specific duration, it recognized that the petitioner's two-and-a-half-year detention was "five times longer than the six months that [the Supreme Court in *Demore v. Kim*, 538 U.S. 510 (2003)] upheld as only 'somewhat longer than average.'"[7] *Id.* at 211, 212. Here, Petitioner has been detained since January 2022, so for more than 18 months. Under the circumstances, the Court finds that the length of his detention without a bond hearing by an independent arbitrator weighs strongly in his favor.

---

[6] In *German Santos*, the Third Circuit explained that the Supreme Court's 2018 decision in *Jennings v. Rodriguez*, — U.S. —,138 S. Ct. 830 (2018) abrogated only that part of *Diop* and *Chavez-Alvarez* in which the Third Circuit had applied the canon of constitutional avoidance and ruled on what it found to be § 1226(c)'s *statutory requirements*. *German Santos*, 965 F.3d at 208. The Third Circuit explained in *German Santos* that *Jennings* "left the framework for as-applied constitutional challenges intact." *Id.*; *see also Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018) ("*Jennings* did not call into question our constitutional holding in *Diop* that detention under § 1226(c) may violate due process if unreasonably long.") Thus, in *German Santos* the Third Circuit reiterated that a noncitizen detained pursuant to § 1226(c) may filed a habeas petition bringing an as-applied due process challenge to his or her "unreasonable" continued detention without a bond hearing. 965 F.3d at 208-11.

[7] In *Demore,* the Supreme Court rejected a facial challenge to § 1226(c) based on the government's representation that detention under that statute typically only lasts between one-and-a-half and five months. 538 U.S. at 529-30.

The second factor the habeas court must consider is "whether the detention is likely to continue." *Id.* at 211. When a noncitizen's removal proceedings "are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Id.* This factor weighs strongly in Petitioner's favor too. His motion to reopen has been pending before the BIA for more than 16 months. Neither this Court nor the parties can predict when the BIA will decide the motion. Moreover, regardless of the outcome of his motion to reopen, Petitioner's immigration proceedings are likely to continue for months or even years for the reasons already discussed. (*See also* ECF 4 at pp. 20-21.) Thus, Petitioner has shown that his detention is likely to continue for quite some time.

The third factor the habeas court must consider is "the reasons for the delay such as a detainee's request for continuances." *German Santos*, 965 F.3d at 211. In this analysis, the Court "ask[s] whether either party made careless or bad-faith 'errors in the proceedings that causes unnecessary delay.'" *Id.* (quoting *Diop*, 656 F.3d at 234). The Court agrees with Petitioner that he is not responsible for the BIA's long delay in deciding the motion to reopen that he filed on March 28, 2022. Moreover, courts are not to "hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings" because "[d]oing so, and counting this extra time as reasonable, would effectively punish [him] for pursuing applicable legal remedies." *German Santos*, 965 F.3d at 211 (citations and internal quotation marks omitted). Thus, this third factor also weighs strongly in Petitioner's favor.

The fourth and final factor the habeas court considers is "whether the alien's conditions of confinement are meaningfully different from criminal punishment." *Id.* As explained above, until very recently, and for about 18 months, ICE detained Petitioner at Moshannon. He submitted evidence to the Court, which Respondents do not contest, to support his position that the conditions

there were similar to penal incarceration. (Pet's Ex. H, Thompson Decl., ECF 4-1 at pp. 93-97.) Thus, this factor also weighs in Petitioner's favor.

Accordingly, Petitioner has shown that, when the Court weighs the relevant factors set forth in *German Santos*, his detention has become unreasonable and that his continued detention without a bond hearing violates his rights under the Due Process Clause. Moreover, and importantly, Petitioner has shown that the two custody reviews that he did have (the first in January 2022 and the second in January 2023), did not provide him adequate process such that no bond hearing would be required in his case.

As Petitioner points out, when the DHS reviewed Petitioner's detention in January 2022, it did so under the assumption that his detention was authorized under § 1226, not § 1231. Thus, Petitioner argues, the DHS did not consider the relevant factors outlined in 8 C.F.R. § 241.4, which applies to noncitizens detained under § 1231. Nor did he receive the required periodic post-order custody reviews required by the regulations for all of 2022. (*See* ECF 4 at 30-31.)

In response, Respondents contend that even if Petitioner's procedural due process rights were violated because he did not receive in 2022 the custody reviews required by the applicable regulations, any due process violation was remedied by the custody review completed on January 19, 2023. Thus, Respondents assert, "to the extent Petitioner could establish any procedural due process violation, it has already been addressed" by the January 19, 2023 custody review. (ECF 8 at 9-10) (internal citation and quotation omitted). They also argue that insofar as Petitioner contends that this review failed to comply with regulations because he allegedly was not provided 30 days' notice, "he is misguided" because "the applicable regulation, 8 C.F.R. § 241.4(k)(2)(iii), does not require 30 days' notice of the annual review[.]" (*Id.* at p. 10.)

Respondents' argument is not persuasive. As Petitioner points out, Respondents' position is that the custody review that occurred in January 2023 was a one-year review under 8 C.F.R. § 241.4(k)(2)(iii) rather than the 180-day custody review at § 241.4(k)(2)(ii). Petitioner maintains that this contradicts Respondents' position that the 180-day period custody review of which Petitioner was deprived was "remedied" by the one-year review, since they have different standards and one does not require notice to the noncitizen or the ability to submit evidence. (*See* ECF 10 at p. 13.)

In any event, the Court finds that the January 2023 custody review did not provide Petitioner with meaningful and adequate process. It is undisputed that although he had counsel who was actively involved for many months in seeking relief on his behalf, his counsel was not notified of the custody review until it was completed. Petitioner's counsel could not submit any evidence or advocate on his behalf.

Additionally, as discussed above, the Third Circuit in *Guerrero-Sanchez* observed that the regulations that implement the government's detention authority under § 1231(a)(6) "themselves 'raise serious constitutional concerns.'" 905 F.3d at 227 (quoting *Diouf*, 634 F.3d at 1091). Although *Arteaga-Martinez* abrogated the Third Circuit's statutory analysis of § 1231(a)(6) and its application of the canon of constitutional avoidance, the Third Circuit's discussion on why it was necessary to invoke that canon, including its concerns about the insufficient process afforded to noncitizens in the regulations, remains persuasive.

Based on the foregoing, the Court will grant the Amended Petition to the extent that Petitioner seeks an order from this Court directing that he receive a bond hearing before an immigration judge at which the government bears the burden to justify his detention by clear and

convincing evidence.[8] The Court notes that Respondents did not address Petitioner's argument that the government should bear the burden at the bond hearing he is requesting. Additionally, the directive that the government has the burden at the bond hearing is consistent with the relief the Third Circuit held was appropriate in *German Santos*, 965 F.3d at 213-14. It is also consistent with the Third Circuit's discussion in *Guerrero-Sanchez* explaining why placing the burden on the government provides the appropriate level of procedural protections to the noncitizen. 905 F.3d at 224 n. 12, 226-27; *see also Cabrera Galdamez v. Mayorka*, No. 22-cv-9847, 2023 WL 1777310, at *8-9 (S.D. NY Feb. 6, 2023.)

### III. Conclusion

For the reasons set forth above, the Amended Petition is granted in part. Respondents shall arrange for Petitioner to have a bond hearing before an immigration judge within 30 days at which the government bears the burden to justify his continued detention by clear and convincing evidence.

An appropriate Order follows.

Dated: August 8, 2023                                BY THE COURT:


                                                     /s/ Patricia L. Dodge
                                                     PATRICIA L. DODGE
                                                     United States Magistrate Judge

---

[8] The Court declines Petitioner's alternative request that it conduct the bond hearing itself. There is no showing in this case that a bond hearing before the Immigration Court would not be individualized or lack the process due to him.