IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADOLPH MICHELIN, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 3:23-cv-22 |
| | ) | |
| v. | ) | Magistrate Judge Patricia L. Dodge |
| | ) | |
| LEONARD ODDO, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is Petitioner Adolph Michelin's Motion for Attorney's Fees under the Equal Access to Justice Act ("EAJA"). (ECF 32.) For the reasons stated herein, the Motion is granted in part and denied in part.

**I.  Relevant Background**

The Nationalities Service Center, a 501(c)(3) non-profit, represented Michelin *pro bono* in this habeas case. The Court summarized the relevant and undisputed factual background of it in its August 8, 2023 opinion granting Michelin habeas relief. (ECF 16.) As explained therein, Michelin was arrested by Immigrations and Customs Enforcement ("ICE") in January 2022. He was detained at the Moshannon Valley Processing Center, which is located within the territorial boundaries of this Court. On or around March 25, 2022, Michelin filed with the Board of Immigration Appeals ("BIA") a motion to reopen his immigration case. At that same time, he applied for an emergency stay of removal in which he asserted his eligibility for asylum based on his fear of persecution in Jamaica. The BIA granted Michelin a discretionary stay of removal on March 28, 2022, but his motion to reopen remained pending.

Almost one year later, in February 2023, Michelin filed his petition for a writ of habeas corpus in this Court under 28 U.S.C. § 2241. The BIA still had not decided Michelin's motion to reopen.[1] By that point, Michelin had been detained at Moshannon for more than one year without a bond hearing. In his petition, Michelin challenged the legality of his prolonged detention without a bond hearing. As relief, Michelin sought an order from this Court ordering his immediate release or that he receive an individualized bond hearing.

The Court ruled in Michelin's favor on August 8, 2023, granting him habeas relief. (ECF 16, 17.) The Court so held because Michelin established that his prolonged immigration detention without a bond hearing violated his rights under the Due Process Clause of the Fifth Amendment. The Court further held that Michelin also established that the two custody reviews conducted by the DHS that he did have (the first in January 2022 and the second in January 2023) did not provide him with adequate process such that no bond hearing would be required in his case. Ultimately, the Court conditionally granted the writ and ordered that Respondents arrange for Michelin to have a bond hearing before an immigration judge in a fixed amount of time and that, if they did not, the writ would issue and Respondents would have to release Michelin to supervised release. (ECF 25.)

Respondents filed a motion for reconsideration, which the Court denied. (ECF 18, 24.) They then filed an appeal to the United States Court of Appeals for the Third Circuit. Respondents voluntarily withdrew that appeal in February 2024.

---

[1] As of the date of this writing the BIA still has not decided Michelin's motion to reopen his immigration proceeding. Thus, the BIA granted Michelin an emergency stay of removal in March 2022, but the motion to reopen he filed at around the same time has been pending before the BIA for more than 28 months.

In the meantime, in accordance with this Court's order granting Michelin habeas relief, Michelin appeared before an immigration judge for a bond hearing on September 5, 2023. (Pet's Ex. A, ECF 32-1 at pp. 3-4.) The immigration judge ordered that Michelin be released from custody under a bond of $10,000.00. (*Id.*) Michelin's family posted his bond. According to his counsel, since then Michelin has been living in Philadelphia with his family and complying with all conditions of his release. (ECF 32 at p. 2.)

Now before the Court is Michelin's Motion (ECF 32) requesting an award of attorneys' fees and other expenses under the EAJA. In support, Michelin has submitted, among other things, the declaration of one of his attorneys, Margaret Kopel (Pet's Ex. C, ECF 32-1 at pp. 7-9), as well as the time entries of Attorney Kopel and her colleagues with the Nationalities Service Center who also worked on this case (Attorneys Jonah Eaton, Whitney Viets and Lilah Thompson). (Pet's Ex. D, ECF 32-1 at pp. 10-17; ECF 39-1 at pp. 1-8.) Michelin's Motion is fully briefed. (ECF 34, 39.)

**II.    Discussion**

"Congress passed the EAJA in response to its concern that persons may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights." *Sullivan v. Hudson*, 490 U.S. 877, 883 (1989) (internal quotation and citation omitted). The EAJA, which amended 28 U.S.C. § 2412 and 5 U.S.C. § 504, was designed to rectify this situation by providing for a mandatory award of reasonable attorneys' fees in some cases. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("the specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions.") It "renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity.

3

Any such waiver must be strictly construed in favor of the United States." *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991).

The EAJA provides, in relevant part, that:

> [e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses...incurred by that party *in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action,* brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified* or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).[2] The EAJA further provides that the "position of the United States" "means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based[.]" *Id.*, § 2412(d)(2)(D).

### A.   The EAJA Applies Here

Respondents contend that a habeas action does not fall with the phrase "any civil action" under the EAJA and therefore Michelin cannot recover attorneys' fees under it. The EAJA does not define the phrase "any civil action," and neither the Supreme Court nor the Third Circuit has addressed whether a habeas action qualifies as one.[3] Notably, however, the Third Circuit has

---

[2] To be eligible for fees under the EAJA, an applicant also must: (1) be a prevailing party; (2) have submitted the motion for fees within thirty days of final judgment; and (3) have a net worth that is less than two million dollars at the time the civil action was filed. 28 U.S.C. § 2412(d)(1)(B), (d)(2)(B)(i). Respondents do not dispute that Michelin satisfied these three conditions.

[3] In support of its position that the EAJA does not apply to Michelin's case, Respondents quote *Daley v. Fed. Bureau of Prisons*, 199 F. App'x 119 (3d Cir. 2006), in which the Third Circuit observed that "the weight of authority indicates…that filing a § 2241 petition is not a 'civil action' for purposes of the EAJA." 199 F. App'x at 121. Because *Daley* is an unpublished decision, it lacks precedential value. Additionally, *Daley's* statement does not have persuasive value here because *Daley* concerned a former federal prisoner who had challenged in a habeas proceeding the date the Federal Bureau of Prisons transferred him to a community confinement center. It did not involve the civil detention of an immigration detainee. Additionally, none of the cases cited in *Daley* were habeas cases filed by an immigration detainee. Thus, neither *Daley* nor the cases cited by it are instructive on the issues presented by Michelin's Motion.

adjudicated motions for attorneys' fees in immigration habeas cases without questioning whether such cases fall outside the ambit of the EAJA. *Kiareldeen v. Ashcroft*, 273 F.3d 542 (3d Cir. 2001) (considering the merits of a motion for attorney's fees under the EAJA in a habeas case filed by a noncitizen challenging the constitutionality of his immigration detention).[4] So too have district courts within the Third Circuit, which have in recent years granted EAJA fees to successful petitioners in habeas immigration proceedings. *See, e.g.*, *Sisiliano-Lopez v. Lowe*, 448 F. Supp. 3d 419, 422 (M.D. Pa. 2020); *Ildefonso-Candelario v. Lowe*, 2017 WL 4310078, at *1 (M.D. Pa. Sept. 28, 2017); *Soriano v. Sabol*, 2017 WL 3268400, at *1 (M.D. Pa. Aug. 1, 2017).

The courts of appeals that have addressed whether immigration habeas cases are "civil actions" under the EAJA are divided. The Second and Ninth Circuits have recognized the distinction between different types of habeas cases and have held that an immigration habeas proceeding is a "civil action" that allows for attorneys' fees under the EAJA. *Vaccio v. Ashcroft*, 404 F.3d 663, 670-72 (2d Cir. 2005) (a habeas proceeding challenging immigration detention constitutes a "civil action" under the EAJA; such actions meaningfully differ from the criminal habeas petitions that courts have held cannot recover fees under the EAJA because they are "hybrid" criminal/civil actions); *In re Hill*, 775 F.2d 1037, 1040-41 (9th Cir. 1985) (the EAJA applied to a habeas action by noncitizens who sought admission to the United States). In contrast, the Fourth and Fifth Circuits have held that all habeas petitions are "hybrid" in nature and thus are not "civil

---

[4] In this case, Michelin prevailed on his claim that, after weighing the factors set forth in *German Santos v. Warden Pike County Corr. Facility*, 965 F.3d 203 (3d Cir. 2020), the Court would conclude that his continued detention without a bond hearing violated his rights under the Due Process Clause. *German Santos* was an immigration habeas case that, like Michelin's, was brought under 28 U.S.C. § 2241. In 2021, the Third Circuit panel that decided *German Santos* entered an order in that case approving of the petitioner and government's stipulation to pay the petitioner's attorneys' fees under the EAJA. *See* Order in *German Santos v. Warden Pike County Corr. Facility*, No. 19-2663 (3d Cir. Feb. 9, 2021).

actions" under the EAJA regardless of whether the detention being challenged is civil immigration detention or criminal detention. *Obando-Segura v. Garland*, 999 F.3d 190, 192 (4th Cir. 2021) (habeas corpus proceedings are unique, hybrid proceedings, therefore making it ambiguous as to whether they fall under "any civil action" within the EAJA); *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) (adopting the *Obando-Segura* majority's reasoning and also citing to cases about habeas petitions arising out of criminal cases to recognize the hybrid nature of habeas proceedings), *cert. denied* sub nom. *Gomez Barco v. Witte*, 144 S. Ct. 553 (2024).

The Court respectfully finds the reasoning of the Second and Ninth Circuits, as well as recent district court cases that have held that immigration habeas cases are "civil actions" covered by the EAJA, to be more persuasive. *See, e.g.*, *Arias v. Choate*, 2023 WL 4488890, at *2 (D. Colo. July 12, 2023) ("immigration habeas petitions are included in the term 'any civil action' as used in the EAJA and the waiver of sovereign immunity applies."); *Daley v. Choate*, 2024 WL 989397, at *2 (D. Colo. Mar. 7, 2024) (same), appeal pending No. 24-1191 (10th Cir.); *see also Kholyavskiy v. Schlecht*, 479 F. Supp. 2d 897, 901 (E.D. Wis. 2007) ("[E]ven if the EAJA could be reasonably read as excluding habeas actions challenging criminal convictions, the same is not true of habeas actions challenging administrative detention."). This conclusion is consistent with the recognition that immigration proceedings themselves are civil in nature. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting, in an immigration detention habeas case, that "[t]he proceedings at issue here are civil, not criminal"); *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) ("[R]emoval proceedings are civil in nature"); *German Santos*, 965 F.3d at 211 (instructing district courts to examine conditions of confinement in immigration habeas petitions because "[r]emoval proceedings are civil, not criminal."); *Xu Long Yu v. Ashcroft*, 259 F.3d 127, 131 (3d Cir. 2001) ("Immigration proceedings, however, are civil, rather than criminal, in nature; therefore the Sixth

6

Amendment guarantee of effective counsel does not attach."); *see also Arias*, 2023 WL 4488890, at *3 (the petitioner's immigration habeas case "bears no hallmark of a criminal proceeding that would render it a 'hybrid' or criminal action outside the ambit of the EAJA.").

Moreover, the only type of "civil actions" that the EAJA excludes from its reach are those "sounding in tort[.]" 28 U.S.C. § 2412(d)(1)(A). "If Congress had intended to exclude habeas actions from the EAJA, it would have done so as it excluded tort actions." *Kholyavskiy*, 479 F. Supp. 2d at 901.

Thus, the Court agrees with Michelin that this habeas case, which challenged the legality of his civil immigration detention without a bond hearing, qualifies as a "civil action" under the EAJA.

### B.      The Government's Position Was Not Substantially Justified

Respondents contend that if the EAJA applies, the Court should nevertheless deny Michelin's request for attorneys' fees because the position the government took with respect to him was "substantially justified."[5] 28 U.S.C. § 2412(d)(1)(A) (the court shall award a prevailing party attorneys' fees "unless the court finds that the position of the United States was substantially justified[.]") It is Respondents' burden to establish that the government's position was substantially justified.[6] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

---

[5] The government can avoid having to pay attorneys' fees under the EAJA if it shows that "that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Respondents bear the burden of proving that special circumstances exist. *Brinker v. Guiffrida*, 798 F.2d 661, 668 (3d Cir. 1986). They do not argue that "special circumstances" exist here that would "make an award unjust."

[6] The Supreme Court has recognized that although "[a]ny given civil action can have numerous phases," in judging the justification of a position, a court must treat the "case as an inclusive whole, rather than as atomized line-items." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161-62 (1990).

To meet this burden, Respondents must show that the government's position was "justified to a degree that could satisfy a reasonable person. Put another way, substantially justified means having a 'reasonable basis in both law and fact.'" *Johnson v. Gonzales*, 416 F.3d 205, 210 (3d Cir. 2005) (quoting *Pierce*, 487 U.S. at 565). Respondents "must show: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Morgan v. Perry*, 142 F.3d 670, 684 (3d Cir. 1998). The court "'must not assume that the government's position was not substantially justified simply because the government lost on the merits.'" *Johnson*, 416 F.3d at 210 (quoting *Kiareldeen v. Ashcroft*, 273 F.3d 542, 554 (3d Cir. 2001)).

Importantly, Respondents "must meet the substantially justified test twice—once with regard to the underlying agency action and then again with regard to [the government's] litigation position in the proceedings arising from that action." *Johnson*, 416 F.3d at 211. Thus, Respondents must show that the government's pre-litigation position regarding Michelin was substantially justified, and if they do not satisfy that burden then he is entitled to an award of attorneys' fees. *Id.*; *Morgan*, 142 F.3d at 684.

Respondents assert that the DHS's pre-litigation position was substantially justified because a final order of removal had been issued in Michelin's case and therefore, he was subject to mandatory detention under 8 U.S.C. § 1231(a), which contains no explicit bond hearing requirement. This argument is not persuasive because Michelin established as fact during the litigation of his habeas petition that up to his January 17, 2023 bond hearing *it was the position of*

*the DHS that he was being detained under 8 U.S.C. § 1226, not 8 U.S.C. § 1231(a).*[7] (Pet's Ex. E, ECF 4-1 at p. 83; Pet's Ex. G, Veits' Decl., ECF 4-1 at p. 90, ¶¶ 4-6; Pet's Ex. F, ECF 4-1 at pp. 87-88.) Since Michelin had no qualifying criminal convictions that would render him detained under § 1226(c), his counsel reasonably determined that he was being detained under § 1226(a) and was thus eligible for a bond hearing. That is why Michelin's counsel filed a motion for such a hearing, which the DHS did not initially oppose. (Pet's Ex. G, Veits' Decl., ECF 4-1 at p. 90, ¶¶ 6-7.)

Michelin's bond hearing was scheduled for January 17, 2023. At the hearing, the DHS contended for the first time that Michelin was being detained under § 1231(a). (*Id.*, ¶ 8.) Based on DHS counsel's explanation that Michelin was being detained under § 1231(a)(6), the immigration court did not conduct a merits-based discretionary hearing on bond. Instead, it held that it lacked jurisdiction to consider Michelin's bond motion. (*Id.*)

During this same hearing, DHS counsel advised Michelin's attorney that the DHS had "just completed a custody evaluation" of him under the applicable regulations.[8] (*Id.*, ¶ 9.) Michelin

---

[7] As the Court recounted in its opinion granting Michelin habeas relief (ECF 16), Michelin proved that on January 27, 2022, which was soon after his arrest, the DHS issued in his case a Notice of Custody Determination. This Notice stated that Michelin was being detained pursuant to 8 U.S.C. § 1226 (§ 236 of the Immigration and Nationality Act ("INA")). (Pet's Ex. E, ECF 4-1 at pp. 83-85.) Later, in an October 2022 email from Michelin's attorney to his DHS deportation officer, Michelin's attorney asked: "To clarify, is it ICE's position that Mr. Michelin is detained pursuant to Section 236 of the INA [8 U.S.C. § 1226] and 8 C.F.R. 241.4(b)(1) since he has a pending motion to reopen?" (Pet's Ex. F, ECF 4-1 at p. 87.) Michelin's DHS deportation officer replied: "Yes." (*Id.*)

[8] As the Court previously explained, "the Third Circuit in [*Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208, 227 (3d Cir. 2018)] observed that the regulations that implement the government's detention authority under § 1231(a)(6) themselves raise serious constitutional concerns. Although [*Johnson v. Arteaga-Martinez*, 142 S. Ct. 1827 (2022)] abrogated the Third Circuit's statutory analysis of § 1231(a)(6) and its application of the canon of constitutional avoidance, the Third Circuit's discussion on why it was necessary to invoke that canon, including its concerns about the insufficient process afforded to noncitizens in the regulations, remains persuasive." (ECF 16 at p. 16) (internal quotations and citations omitted).

established that this was the first time his attorney was notified "of this custody evaluation, despite having been [his] counsel of record for nearly a year, having corresponded with [his deportation officer] about the custody evaluation just three months' prior, and having communicated on a near-constant basis with ICE officials at Moshannon Valley to coordinate calls with [Michelin] throughout 2022." (*Id.*, ¶¶ 9-11.) Michelin's attorney requested that DHS counsel notify ICE of her intention to submit documentation to ICE to support Michelin's release. DHS counsel agreed to contact ICE as soon as possible. (*Id.*, ¶ 9.)

The next day, on January 18, 2023, a DHS officer called Michelin's attorney and informed her that his custody evaluation had "already been completed" and "sent up the chain of command" at DHS. As a result, the officer stated, Michelin's attorney would be unable to submit documentation in support of his release from detention. (*Id.*, ¶ 10.) One day later, on January 19, 2023, ICE issued a Decision to Continue in which it informed Michelin that it would not release him from custody because it expected to carry out his "removal in the reasonably foreseeable future should your Motion to Reopen and Stay of Removal be denied." (Resp's Ex. 4, ECF 8-4 at p. 2.)

By this time, Michelin had been detained more than one year without a bond hearing. The BIA had granted the emergency motion to stay his removal nine months earlier in March 2022, but it had not decided the motion to reopen that he had filed around the same time. Of course, the DHS had no control over when the BIA decided Michelin's motion to reopen. But the DHS's position that, although the BIA had granted Michelin an emergency stay of removal in March 2022, it could nevertheless detain him under § 1231(a)(6) indefinitely and without a bond hearing and also without providing him with sufficient notice of or input in his January 2023 custody review was not "justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565.

10

For all of these reasons, the Court finds that Respondents have not satisfied their burden of establishing that the DHS's pre-litigation position with respect to Michelin's custody was "substantially justified."[9] Michelin is thus eligible to recover reasonable attorneys' fees and other expenses under the EAJA.

### C.  The Amount of the Fee Awarded

The Court's next task is to determine what fee award is reasonable. The EAJA authorizes fees not to exceed $125 per hour, adjusted for inflation. 28 U.S.C. § 2412(d)(2)(A)(ii).

1.  <u>The adjusted hourly rate</u>

The parties agree that in calculating the adjusted hourly rate the Court should refer to the

---

[9] Because the Court finds that the government's pre-litigation position regarding Michelin was not "substantially justified," the Court need not decide whether the position it took during the litigation of this case was "substantially justified." *See, e.g.*, *Morgan*, 142 F.3d at 684; *Johnson*, 416 F.3d at 210. The Court notes, however, that in their answer to Michelin's petition (ECF 8), Respondents did not contest the evidence that Michelin presented in support of his as-applied due process claim, counter most of arguments made in support of it, or request an evidentiary hearing on any issue. Rather, Respondents maintained that the government could subject Michelin to open-ended detention without that detention ever being subject to review by an independent adjudicator. The government could do so, Respondents asserted, because the government would have deported Michelin in March 2022 if he had not moved to reopen his immigration case and obtained an emergency stay of removal. In support of this position, Respondents cited unpublished decisions in which a court denied an immigration detainee's requests for habeas relief when the delay of removal was caused by legal proceedings initiated by the detainee and not, as with each detainee in *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001), the government's inability to find a country to accept the detainee. (ECF 8 at pp. 8-9.) Although Michelin's as-applied due process claim presented novel and complex issues, Respondents should have addressed Michelin's argument that, given the Supreme Court's recent decision in *Johnson v. Arteaga-Martinez*, 142 S. Ct. 1827 (2022), there was ambiguity as to the proper framework to analyze his as-applied due process challenge and that the proper framework the Court should apply was that which is set forth in *German Santos v. Warden Pike County Corr. Facility*, 965 F.3d 203 (3d Cir. 2020). The first time Respondents addressed that argument was in the motion for reconsideration they filed after the Court granted Michelin habeas relief and closed this case.

following rate schedule proposed by Respondents.[10] This schedule adjusts the hourly rate calculation for each of the months when Michelin attorneys state that fees were earned, using the consumer price index for consumers for that month as follows:[11]

| | |
|---|---|
| January 2023 | $240.18 |
| February 2023 | $241.52 |
| March 2023 | $242.32 |
| April 2023 | $243.55 |
| August 2023 | $246.49 |
| September 2023 | $247.10 |
| October 2023 | $247.01 |
| February 2024 | $249.14 |
| March 2024 | $250.75 |

2. <u>Exclusion of certain fees</u>

The total award that Michelin seeks under the EAJA is $21,392.51.[12] Courts may award only "reasonable" attorney's fees and expenses under the statute. 28 U.S.C. § 2412(d)(2)(A). Michelin, as the fee applicant, "bears the burden of establishing entitlement to a reasonable award and documenting the appropriate hours expended and hourly rates." *Beattie v. Colvin*, 240 F. Supp. 3d 294, 296 (D.N.J. 2017) (citations omitted). "The Supreme Court has cautioned that '[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.'" *Id.* at 296 (quoting *Hensley v. Eckerhart*,

---

[10] The inflation data is now available for the months of February and March 2024 and therefore the Court has updated the proposed table submitted by Respondents to reflect the inflation-adjusted hourly rate for those months. *See* https://www.bls.gov/data/inflation_calculator.htm.

[11] Respondents have established that Michelin calculated the adjusted hourly rate incorrectly in his Motion. (ECF 34 at pp. 11-13.) Michelin has acknowledged this and has conceded to the proposed rate schedule provided by Respondents. (ECF 39 at p. 6.)

[12] This amount was calculated under the table contained herein and also accounts for the additional 15.3 hours of work Michelin's counsel spend on the reply (ECF 39).

461 U.S. 424, 434 (1983)). "A district court has broad discretion in determining the appropriate amount of a fee award." *Id.* (citing *Hensley*, 461 U.S. at 437); 28 U.S.C. § 2412(d)(1)(C) ("The court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy.")

Respondents assert that the Court should reduce the amount of the award requested by Michelin because they claim that: (a) many of his counsels' time entries are overly vague; (b) his counsel attempts to recover for clerical tasks that are not compensable under the EAJA; and (c) he cannot recover for fees incurred in connection with the September 5, 2023 bond hearing before the immigration judge.

(a)     Alleged vague time entries

Respondents contend that the Court should reduce any fee award by almost $5,000 for time entries that allegedly lack sufficient detail to determine whether the work is compensable. In evaluating this contention, the Court notes that Michelin's counsel are "not required to record in great detail how each minute of [their] time was expended." *Hensley*, 461 U.S. at 437 n.12 . Counsel should, however, "at least…identify the general subject matter of [their] time expenditures." *Id.*

Respondents contend that many of counsel's time entries fail to meet that burden. They note that counsel's entries include time entries for "response to motion to reconsider," "research," "declaration," "fees motion," and "amended petition." They argue that these entries are vague and makes it impossible to determine if the time is compensable. Michelin disagrees, asserting that his counsel have adequately identified the general subject matter of the time entry.

13

Having reviewed these entries in the context of the legal work that was involved in this matter, the Court finds that these entries are sufficient. Accordingly, Respondents' request for a fee reduction for these entries will be denied.

(b)  Alleged clerical tasks

Respondents object to Michelin's attempt to recover over $600.00 in fees for work performed by Attorney Kopel for what they describe as "clerical tasks." *See, e.g.*, *Torres v. Saul*, 2020 WL 4581825, at *7 (D.N.J. Aug. 10, 2020) ("clerical work that can be performed by non-attorneys is not compensable as attorney's fees under the EAJA.") Specifically, they assert that Michelin cannot recover fees to cover time that Attorney Kopel devoted to service of process (2.3 hours) and also for the time it took her to file the form indicating that Michelin consented to a Magistrate Judge presiding over the case (12 minutes).

Michelin counters that the Nationalities Service Center does not employ paralegals who assist attorneys with clerical tasks such as service of process. He also points out that Respondents' counsel declined Michelin's request to waive service. According to Michelin, "[t]his was a waste of time, but one that sits squarely on Respondents." (ECF 39 at p. 7.)

Given the fact that counsel for Michelin does not employ paralegals who could assist with tasks such as service, the Court concludes that recovery of these fees will be permitted.

(c)  Time spent on the bond hearing

Michelin seeks fees for 22.5 hours of work (for a total of $5,550.91) performed by Attorneys Viets and Thompson related to the September 5, 2023 bond hearing.[13] Since the fees for that work was not "incurred" in this "civil action[,]" the EAJA's provision at § 2412(d)(1)(A) does not apply.

---

[13] Counsel worked 14.5 hours in August 2023 ($3574.11) preparing for the bond hearing and worked 8 hours in September 2023 ($1,976.80) preparing for that hearing.

Thus, as Respondents point out and Michelin does not contest, he must be seeking an award of fees for that work under that part of the EAJA that is codified in the Administrative Procedure Act ("APA") at 5 U.S.C. § 504(a)(1). *Kabura*, 2020 WL 4747788, *5 ("the recovery of fees for agency adjudications like those conducted in Immigration Court are governed by 5 U.S.C. § 504.")

Section 504(a)(1) provides, in relevant part, that "an agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust." An "adversary adjudication" is "an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise." 5 U.S.C. § 504(b)(1)(C)(i).

In *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991) the Supreme Court "conclude[d] that administrative immigration proceedings do not fall 'under section 554' and therefore are wholly outside the scope of the EAJA." Thus, the EAJA does not act as a waiver of sovereign immunity as to the September 5, 2023 bond hearing before the immigration judge, and Michelin cannot recover fees for work performed by his attorneys associated with it.[14] *Kabura*, 2020 WL 4747788, *5

---

[14] As Respondents point out, before the Supreme Court decided *Ardestani*, some courts had held "that EAJA fees may be awarded for administrative proceedings intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees." *Nadarajah v. Holder*, 569 F.3d 906, 920 (9th Cir. 2009) (internal quotation and citation omitted). This principle arose from the Supreme Court's decision in *Sullivan v. Hudson*, 490 U.S. 877, 888 (1989)). As the Ninth Circuit has recognized, however, "[s]ince *Ardestani*, *Hudson's* holding has been narrowly applied and limited to post-litigation situations … where there was a court-ordered remand for further administrative proceedings and the agency representation was necessary to carrying out the court's order." *Nadarajah*, 569 F.3d at 920.

As the Eight Circuit has explained, "*Hudson* sets out specific and well-defined prerequisites" before it applies: "there must be a remand by the reviewing court and 'detailed
*Footnote continued on next page…*

(concluding that the government correctly objected to the petitioner's request for fees for representation before the immigration judge).

Accordingly, Michelin is not entitled to an award of fees for the 22.5 hours of work performed by Attorneys Viets and Thompson related to the bond hearing. The Court therefore will reduce Michelin's requested award by $5,550.91, which accounts for the reduction of 22.5 hours of non-compensable time associated with the bond hearing. (*See* ECF 34 at pp. 17-18.)

### III. Conclusion

Based on the above, the Court concludes that Michelin is entitled to an award of $15,841.60 in attorneys' fees and other expenses under the EAJA. This award was calculated as follows:

| January 2023 | 9.5 hours x 240.18 = $2,281.71 |
| February 2023 | 12.8 hours x $241.52 = $3,091.46 |
| March 2023 | 13 hours x $242.32 = $3,150.16 |
| April 2023 | .2 hours x $243.55 = $48.71 |
| August 2023 | 9.7 hours x $246.49 = $2,390.95 |
| October 2023 | 2 hours x $247.01 = $494.02 |
| February 2024 | 2.2 hours x $249.14 = $548.11 |
| March 2024 | 15.3 hours x $250.75 = $3,836.48 |

The Supreme Court has held that "a § 2412(d) fees award is payable to the litigant and is therefore subject to a Government offset to satisfy a pre-existing debt that the litigant owes to the United States." *Astrue v. Ratliff*, 560 U.S. 586, 589 (2010). An award is payable to the attorney where the client has no outstanding federal debt and expressly assigned the right to receive fees to

---

provisions for the transfer of proceedings from the courts to the [agency],' which would implicate 'a degree of direct interaction between a federal court and an administrative agency alien to traditional review of agency action under the [APA],' [*Hudson*, 490 U.S. at 885], before the award of fees can be even considered." *Full Gospel Portland Church v. Thornburgh*, 927 F.2d 628, 632 (1991). None of those circumstances are present here. This Court did not remand this case to the immigration judge, nor did it retain jurisdiction over the matter. And Michelin would have been considered the prevailing party regardless of the outcome of the bond hearing before the immigration judge.

his or her attorney. *See, e.g.*, *Mathews-Sheets v. Astrue*, 653 F.3d 560, 565-66 (7th Cir. 2011) (interpreting *Ratliff* to suggest "that if there is an assignment, the only ground for insisting on making the award to the plaintiff is that the plaintiff has debts that may be prior to what she owes her lawyer. There is no indication of that in this case, so to ignore the assignment and order the fee paid to her would just create a potential collection problem for the lawyer"), overruled on other grounds by *Sprinkle v. Colvin*, 777 F.3d 421 (7th Cir. 2015); *Beattie v. Colvin*, 240 F. Supp. 3d 294, 299 n.1 (D.N.J. 2017) ("[I]n this case [which is governed by the EAJA], the legal work was performed *pro bono*, so there is no question of whether fees should be directed to the client to reimburse him for any sums already paid to counsel. To the contrary, where, as is the case here, there is an assignment agreement and the prevailing party owes no debt to the government, the Supreme Court has honored that agreement and awarded attorney's fees directly to the prevailing party's counsel.")

Here, Michelin avers that, to the best of his knowledge, he does not "owe any debt to the United States federal government." (Pet's Ex. B, Michelin Decl., ECF 32-1 at p. 6, ¶ 7.) He also states that he has elected that any fees and costs that are awarded by the Court be issued directly to his counsel. (*Id.*, ¶ 5.) Therefore, the Court will do so.

## ORDER

And now, this 26th day of August, 2024, it is hereby ORDERED that the Court grants in part and denies in part Michelin's Motion for Attorney's Fees (ECF 32). Respondents shall pay Michelin's counsel the sum of $15,841.60 in attorneys' fees and expenses within thirty days of the date of this order.

BY THE COURT:


/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge